IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID YOUNGER,** | CIVIL ACTION |
| *Plaintiff,* | |
| v. | No. 22-1027 |
| **THE GEORGE SCHOOL,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                                April 17, 2024

The George School moves for summary judgment regarding claims made by its former employee, David Younger, who alleged that his supervisor racially discriminated against and harassed him, subjected him to a hostile work environment, and ultimately terminated him in retaliation for having filed complaints of racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20000e, *et. seq.*, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et. seq*.  Because there is sufficient evidence in the record to warrant submission of these claims to a jury, the motion shall be denied.

**I.    PROCEDURAL HISTORY**

Younger is an Asian American of Filipino ancestry who began working for the George School on January 8, 2018 as a master electrician.  (Am. Compl. ¶¶ 15-17, ECF No. 9; Def.'s Ans. ¶¶ 15-17, ECF No. 10).  Throughout his employment, Younger was supervised by Joe Nicolosi, the School's Maintenance Manager, and Michael Gersie, Director of Operations, both of whom

1

are Caucasian.  (Am. Compl. ¶¶ 19-20; Def.'s Ans. ¶¶ 19-20).  Younger was the only Asian American George School employee supervised by Gersie and Nicolosi.  (*Id*.).

Younger alleges that after the inception of the COVID-19 pandemic in 2020, Michael Gersie "openly began acting in a hostile, derogatory and insulting manner" toward him "due to his Asian race." (Am. Compl. ¶22).  This behavior took the form of, *inter alia*, cornering Younger in the shop and accusing him of taking materials belonging to the school for personal gain, unjustly accusing him of trying to sabotage the tires on another employee's school work van and of driving at an unsafe speed and tailgating another employee on school grounds, physically intimidating him by standing directly in his face while yelling at him, accusing him of not completing work orders, calling him stupid and other derogatory names, threatening to fire him, and telling him "his people" were always causing problems and were the reason they all had to wear masks.  (*Id*. ¶ 24).  Younger avers Gersie did not treat other non-Asian employees the same way.  (*Id*. ¶ 26).

On November 3, 2020, Younger registered a formal complaint about Gersie's treatment of him via email to Dannette Crockett, George School's Human Resources Director, and its Head of School, Sam Houser.  (Am. Compl., Ex. 1).  In his complaint, Younger asserted there had been "multiple incidents" over the preceding eight months in which Gersie targeted and discriminated against him, and reported discussing these incidents with Nicolosi who "documented" them.  (*Id*.).  In his email, Younger stated he wished to "file a formal complaint for harassment and hostile work environment against Mike Gersie," and he expected that Crockett and Houser would provide him "with the paperwork to file or provide what the next steps are for this process." (*Id*.).  He also requested assurances that Gersie would not retaliate against him for filing the complaint.  (*Id*.).

In response to Younger's complaint, Crockett interviewed Younger, Gersie, Nicolosi and two other physical plant employees, Dave Schnell and Kyle Schenck.  While acknowledging

Younger "mentioned he thought" Gersie's treatment was "because of his race," Crockett determined there was no evidence it was race-related because there was "nothing specific that could be tied to . . . what [Younger's] race was." (Def.'s Statement Undisputed Material Facts Ex.13, at 9-10, ECF No. 17). Accordingly, no action was taken.

On March 2, 2021, Younger emailed Crockett to file a second formal complaint against Gersie for an incident which occurred on February 26, 2021 in which Younger felt Gersie was "targeting" and retaliating against him for his first formal complaint. (Am. Compl., Ex. 2). Younger alleged he had been retrieving a gator/cart from a job location where it had been left and was following Kyle Schenck back to the shop when they passed Gersie on the south loop of the cart path going approximately 5 m.p.h. (*Id*.). Instead of using the radio, Gersie called Younger on his personal cellphone and accused him of tailgating Schenck's cart at a dangerous rate of speed, and ordered him to "stop it or else." (*Id*.). Believing that Gersie had used his phone rather than the group radio so no one else would hear his accusation and threat, Younger perceived this action to be "a direct action to try and antagonize me and bait me into saying something inappropriate so that he could use it against me." (*Id*.). Crockett did not respond to Younger's complaint until March 8, 2021. On that date, she sent an email to Younger advising him that "[a] supervisor asking for an expected behavior is not retaliation. Nor is someone calling a person on their personal cell phone." (*Id*.). Crockett further advised Younger that "[t]he issue's (sic) you outlined in your initial complaint have been addressed. That being said you and Mike still have supervisor/employee relationship and repairing past perceptions and issues will take time." (*Id*.).

The following day, March 9, 2021, after reading Crockett's email, Younger is alleged to have engaged in a "profanity-laden tirade" in front of Nicolosi and two of his co-workers, Schenck and Mark Harrigan. (Def.'s Mot. Summ. J. 3, ECF No. 16). Younger's rant is said to have been

3

directed against both Crockett and Gersie, describing both in vile and wholly inappropriate terms, and threatening to punch Gersie in the face and "knock his ass out." (*Id*.). Nicolosi ordered Younger to stop, calm down and asked him what had gotten him so upset. (Def.'s Statement Undisputed Material Facts, Ex. 12). Younger ostensibly did calm down and there were no other confrontations afterward, and later that day, Younger apologized to Nicolosi for his outburst. (*Id*.). Nevertheless, Nicolosi reported what Younger had said to Crockett, Gersie, and Houser and following a meeting among the four of them the next morning, Younger's employment was terminated effective immediately. (Def.'s Statement Undisputed Material Facts, Exs. 4, 15, 16, 17).

Younger filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") on April 16, 2021. After receiving a Notice of Right to Sue, he filed this suit on March 17, 2022.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense on which summary judgment is sought." Fed. R. Civ. P. 56(a). The motion shall be granted and judgment entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. "A genuine dispute exits 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Stone v. Troy Construction, LLC,* 935 F.3d 141, 148, n. 6 (3d Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A "judge's function" in evaluating a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Salazar-Limon v. City of Houston,* 137 S. Ct. 1277, 1280 (2017) (quoting *Anderson*, 477 U.S. at 249). To ascertain whether a genuine issue of material fact exists, the Court must review the record as a whole. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "The issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence." *Anderson*, 477 U.S. at 248-249. "[R]ather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (internal citation omitted). And, in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2016) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378, (2007). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (internal citation omitted).

### III. DISCUSSION

As noted, Younger has raised claims under Title VII, Section 1981, and the PHRA for racial discrimination, harassment, hostile work environment and retaliation. Because these statutes[1] essentially parallel each other by proscribing the same conduct and, in the case of Title

---

[1] Under Title VII,

> "[i]t shall be an unlawful employment practice for an employer. . . to fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a)(1).

Section 1981 decrees that:

VII and the PHRA, include the same pre-requisites to filing (administrative exhaustion), they are interpreted and adjudicated under the same analytical framework. *See Niculcea v. Stone Ridge Town Ctr.*, 2022 U.S. App. LEXIS 33642 at *8 (3d Cir. Dec. 22, 2022) (per curiam, non-precedential) (noting "the PHRA is analyzed under the same standards as its federal counterparts"); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("[W]hile Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions . . . its courts nevertheless generally interpret the PHRA in accord with its federal counterparts"); *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 362 (E.D. Pa. 2023) ("As an initial matter it is worth noting that Plaintiff's claims across Section 1981, Title VII, and the PHRA can be consolidated for purposes of this analysis"); *Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa. 1996) ("Plaintiff's Title VII, PHRA, and § 1981 claims all fall under the same analytical framework, and

---

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Similarly, the PHRA provides that it is unlawful

> "[f]or any employer because of the race, color, . . . ancestry, [or] national origin of any individual . . . , to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual . . . is the best able and most competent to perform the services required.

43 P.S. § 955(a).

will therefore be examined together"). Accordingly, I will consider Younger's claims under all three statutes simultaneously, applying the same analysis.

Employment discrimination cases in which direct evidence is lacking have long been evaluated under the burden-shifting paradigm first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff in a Title VII action complaining of a discriminatory discharge bears the burden to initially make out a prima facie case of discrimination by showing: (1) he is a member of a protected class, (2) he was qualified for the position he sought to attain or retain, (3) he suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Once the initial showing has been made, an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id*. (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant does so, the inference of discrimination drops and the burden returns to the plaintiff to show that the defendant's proffered reason is merely a pretext for intentional discrimination. *Id.*

This same burden-shifting process is also applied to claims alleging retaliation. In addition to its proscription against racial discrimination in general and racial discrimination in hiring, failing, or refusing to hire and discharging individuals, Title VII[2] also makes it "an unlawful

---

[2] The parallel provision in the PHRA provides that it is an unlawful discriminatory practice:

> For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. § 955(d).

employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3(a).  To survive summary judgment on a retaliation claim, a plaintiff must first make out a prima facie case by producing evidence that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action.  *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021).  If the employee establishes this prima facie case, then under the *McDonnell Douglas* approach, the burden shifts to the employer to provide a legitimate, non-retaliatory explanation for its action against the plaintiff.  *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).  If the employer meets that burden, the plaintiff can then only prevail at summary judgment if he produces evidence that the employer's explanation is false and is a mere pretext. *Kengerski*, 6 F.4th at 536 n. 3; *see generally, McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Temporal proximity is a factor that can be used to establish the third element of a plaintiff's prima facie case of retaliation as well as to discredit an employer's justification at the third step of the *McDonnell Douglas* analysis.  *Proudfoot v. Arnold Logistics, LLC*, 629 F. App'x 303, 308 (3d Cir. Oct. 8, 2015) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 709 & n.6 (3d Cir. 1989)).  "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this is 'sufficient standing alone to create an inference of causality and defeat summary judgment.'"  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)).  "Where

8

the temporal proximity is not 'unduly suggestive,'" courts ask "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Id*.

The burden shifting paradigm does not, however, apply to claims seeking to recover for a hostile work environment. *Moody v. Atl. City Bd. of Educ.*, 820 F.3d 206, 213 n. 11 (3d Cir. 2017). This is because there can be no legitimate justification for a hostile work environment. *Id*. To succeed on a hostile work environment claim against an employer, a plaintiff must show: (1) he suffered intentional harassment based on his race; (2) the harassment was severe or pervasive, (3) the harassment detrimentally affected him; (4) the harassment would have detrimentally affected a reasonable person in similar circumstances; and (5) a basis for employer liability." *Id*. (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). The last factor requires the plaintiff to point to facts showing the employer was aware of the discrimination/harassment but failed to take prompt and appropriate corrective action. *Cooper v. Pa. Human Rels. Comm'n*, 578 F. Supp. 3d 649, 665 (M.D. Pa. 2022) (citing, *inter alia*, *Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)).

In examining the record produced by the parties in light of the preceding principles, I find sufficient evidence exists to warrant the submission of all of Younger's claims to a jury. For one, as an Asian American, Younger has shown himself to be a member of a protected class who was qualified for the position which he held for over three years. Indeed, both Gersie and Nicolosi testified in their depositions that Younger was a good electrician and a good worker. (Def.'s Statement Undisputed Material Facts, Ex.6 at 13; Ex. 18 at 24).

The remaining elements necessary for a prima facie case of discrimination and retaliation are established in this case by the following evidence. Younger testified at his deposition that Gersie had on several occasions insulted and cornered him in an area of the shop when no one else

9

was around, to tell him, *inter alia,* "your kind of people are always causing problems," and "your kind of people are the reason we have to wear these masks," "I own your ass," and "your ass is grass and I'm the lawnmower." (Def.'s Statement Undisputed Material Facts, Ex. 2, 63-74). Additionally, Younger stated Gersie on other occasions had unfairly accused him of taking too long to do a job, not finishing jobs, trying to sabotage a work van when he was simply inflating two flat tires for the employee who was assigned to use the van, and repeatedly threatening to fire him. (*Id*. at 83-94).

Younger testified that based on these statements, threats, and behavior, he believed Gersie was discriminating against him and targeting him because he is Asian, and that he made several informal complaints about Gersie's behavior to Nicolosi, who did not address them. (Def.'s Statement Undisputed Material Facts, Ex. 2, 63-77). Eventually, Younger filed a formal complaint accusing Gersie of discriminatorily targeting and harassing him, with the George School's HR Director Danette Crockett, and Head of School Sam Houser, on November 3, 2020. (Am. Compl. Exs. 1, 2). In so doing, he engaged in the protected activity which is pre-requisite for making out a claim for retaliation. Crockett undertook to investigate Younger's complaint by interviewing Younger, Nicolosi, and Gersie, as well as physical plant employees Dave Schnell and Kyle Schenck. Younger's testimony as to Gersie's targeting, demeaning, and insulting treatment was corroborated in the statements given by Schnell and Schenck to Crockett during her investigation of the November 3, 2020 complaint, and even Nicolosi acknowledged in his statement that it was very unlikely Younger was trying to damage the tires on another employee's work van and noting Gersie was often rough with the physical plant crew and was aggressive with Younger on that occasion. (Def.'s Statement Undisputed Material Facts, Ex. 10). Despite this evidence, neither Crockett, Houser or anyone else at The George School took any action on Younger's complaint

10

beyond this investigation. Gersie was never disciplined or counseled. (Def.'s Statement Undisputed Material Facts Ex.13, 9-13).

Following the incident in which Gersie accused Younger of speeding and tailgating Schenck's Gator, Younger believed Gersie was continuing to target him, was antagonizing him, and was trying to "bait [him] into saying something inappropriate so that he could use it against [him]." Younger then filed a second complaint on March 2, 2021 with Crockett alleging Gersie was retaliating against him for his earlier filing. (Am. Compl., Ex. 2). Believing the nature of Younger's complaint was "simplistic," Crockett didn't think any investigation was warranted because there were policies against retaliation in the George School handbook and both she and Sam Houser had said they would do their best to make sure there was no retaliation. (Def.'s Statement Undisputed Material Facts Ex.13, 13-14). Crockett therefore did not investigate, but instead elected to simply send Younger an email on March 8, 2021 in which she told him: "A supervisor asking for an expected behavior is not retaliation. Nor is someone calling a person on their personal cell phone." (Def.'s Statement Undisputed Material Facts, Ex. 12). After reading Crockett's response the following day, Younger's profanity-laden outburst against Gersie and Crockett allegedly ensued. Nicolosi reported it to Crockett and Houser and the following day, Crockett, Houser, Gersie and Nicolosi decided to immediately terminate Younger's employment. (Def.'s Statement Undisputed Material Facts, Ex. 13). Younger thus obviously suffered an adverse employment action, and given its immediacy, this evidence also gives rise to an inference of discrimination and the existence of a causal connection between the plaintiff's participation in the protected activity and the adverse employment action. Accordingly, I find a prima facie case of both unlawful discrimination and retaliation has been made out.

11

The George School asserts it terminated Younger solely because of what he said on March 9, 2021 about Gersie and Crockett and the way he said it. This is, of course, completely understandable. Taking Nicolosi's version of events as true, yelling the obscenities which Younger is charged with yelling about anyone, let alone a supervisor and a school official, and exhibiting the anger which he says Younger exhibited, is wholly unacceptable workplace behavior, and worthy of severe discipline and/or termination. Nicolosi, however, is the only witness on the record to have seen and heard Younger. There is no evidence on this point from either Kyle Schenck or Mark Harrigan, and Younger himself denies saying any of the things Nicolosi accused him of saying in his report to the others. (Def.'s Statement Undisputed Material Facts, Ex. 2, 181-186). Because at summary judgment, I am required to view the evidence in the light most favorable to, and draw all justifiable inferences in favor of the non-moving party, the matter of whether Younger said what he is accused of saying is a matter of credibility which must be left to a jury to resolve. I thus cannot find at this stage that the George School's articulated reason for terminating Younger is, in fact legitimate and is not instead a mere pretext for discrimination and/or retaliation. That Younger was terminated just one week after filing his second complaint alleging Gersie had retaliated against him for his first complaint further establishes the temporal proximity which, standing alone is sufficient to create an inference of causality and defeat summary judgment. For these reasons, the summary judgment motion is denied as to the discrimination and retaliation claims.

I am likewise compelled to deny the motion as to Younger's claim for hostile work environment. Again, viewing the record evidence in the light most favorable to Younger, I find it may reasonably be inferred that he suffered intentional, severe and/or pervasive harassment based on his race, which detrimentally affected him as it would any other reasonable person in similar

circumstances, and that a basis for employer liability exists given the George School took no actions to address Gersie's behavior. Accordingly, the George School's motion for summary judgment is denied in its entirety.

      An appropriate Order follows.